And we have one final appeal schedule for argument this morning. Atlanta Rotomolding v. CI Rotomolding. Andrew Jacob Tuck is here for Atlanta. Frederick David Cruz is here for CI. And Mr. Tuck, are you ready to proceed? I am. Thank you, Judge Wilson, and may it please the court. Andy Tuck for CI Rotomolding. This is a Federal Arbitration Act interlocutory appeal. There are two issues up for the court today. The first is the court's appellate jurisdiction under the Federal Arbitration Act, given the course of proceedings below and the motion to dismiss briefing. And the second is if the court finds that it has jurisdiction, which we believe it should, whether the court should order the case directly to arbitration right now, as my client CI Rotomolding argues, or instead send it back to Judge Thrash for further proceedings on a waiver issue as Atlanta Rotomolding requests. So to get into the jurisdiction issue, I want to just walk through how this played out at the district court and why that supports Federal Arbitration Act interlocutory jurisdiction here. CI Rotomolding, since this dispute arose, it's a dispute about... Counselor, excuse me, this is Judge Thompson. Could you just tell me why you didn't include that in the motion to dismiss? And simply say, you know, it'd take one sentence. Enter a stay or order arbitration based on the arbitration clause. So the citation we included in the motion to dismiss, and believe me, I wish now, given all the paper we've spent on it, I had included that sentence. But the citation we included was to cruise the singular wireless. And that's a case where this court endorsed the remedy for when everything's arbitrable in a case, you don't need to stay it. You can dismiss the whole thing. There's no reason for Judge Thrash to keep this on his docket if everything's arbitrable. So that was the case we cited in the footnote. I wish I'd added the additional Section 4 of the FAA or Section 3 stay. And, you know, to be clear, Judge Collins, we did add Section 3 stay in the reply brief. The argument here that Atlanta Rotomolding makes is that that's just somehow too late. But before Judge Thrash decided anything, he clearly had our position that, you know, we believe that the whole case should be dismissed, cruise the singular wireless, and if you don't want to dismiss the whole thing, you can keep it on your docket and stay it, a Federal Arbitration Act Section 3. So let me ask you... The last two paragraphs are pretty much the last two paragraphs of the 20-some-odd page motion, brief, right? Reply brief. Oh, no, no, the reply brief, we had a much more discussion. I think the two-paragraph argument is about our opening brief. You're right. You're right. Yeah, our opening position in our opening brief was the case needs to be dismissed. So the way this plays out is they're asking... This entire lawsuit is about payments that came with an asset and purchase deal. There's also an indemnification clause in that asset and purchase deal, and that's where the arbitration clause is. But C.I. Rotomolding's position since before the fight erupted was there's no indemnification claim here. You're seeking your payments. You're not seeking any loss that we caused you. And the reason the indemnification provision is important is because it has a transfer of attorneys' fees clause, not only an arbitration clause, but also attorneys' fees. So we told them before suit, you've got to file this in federal court because you don't have an indemnification claim, and the form selection clause in the rest of the contract is for the Northern District of Georgia. We told them in our motion to dismiss... I'm sorry, before that, they filed this complaint, which on its face is impossible. You can't have an indemnification claim and bring it in the Northern District of Georgia because it has to be arbitrated. But for 24 pages of the 25-page brief, our position was there is no indemnification claim here because this isn't a loss. The indemnification claim, the arbitration provision, the transfer of attorneys' fees, all of those came to life when Judge Thrash ruled that they do have an indemnification claim, and that's why we included that last-page argument for the judge. This is Judge Newsom. Can I ask you a question? I think I've got maybe, at least in my mind, a more fundamental question. I'm looking at the language of the statute, which requires... I'm looking at section 16, and it says that there is an appeal from an order refusing to stay under section 3 or denying a petition under section 4. So it seems to me that we ought to be looking at the order. And so if I look at the order in Document 23, the initial order, not the amended order, I don't care about the amended order, but the initial order, where in that order is there a denial of either a motion to stay or a motion to compel? Well, I would say that by dismissing the motion to dismiss, or sorry, not dismissing, but rejecting it in its entirety, Judge Thrash necessarily ruled on our request to send this to arbitration. Well, I mean, I guess I'm looking at the order, and it says, you know, a complaint should be dismissed under Rule 12b-6. Cites Twombly and Ekbal. Sounds like a standard, you know, sort of motion to dismiss for failure to state a claim to me, which I think is a very reasonable interpretation given the underlying motions. But, I mean, why aren't we focusing on the order itself? That's what the statute requires, is that the appeal comes from the order. Let's look at what the order, you know, sort of thinks it's about. Judge Newsom, I think if that's the standard, if a district judge can deny relief that has been requested by a party and avoid appeal just by not talking about it, then litigants like C.I. Rotemolding are going to be in an impossible position because Judge Thrash can just ignore their request for arbitration and avoid appeal and force us to go into costly federal court discovery when we're actually entitled to arbitrate. Well, I mean, I guess I have two things to say about that. One is I don't think that that is really remotely what happened here. I think that Judge Thrash is responding quite reasonably to the papers you put before him. But, two, if that were to happen, if we have district court judges just going rogue and ignoring the underlying motion papers, couldn't you just file a motion to reconsider that says, wait, wait, you've totally misunderstood what we were requesting? That's fair, and I anticipate that if this case goes back down, we will file such a, possibly not a reconsideration, but just a direct motion to request arbitration and we'll deal with all the waiver fights that are requested. But for purposes of this case, the issue is that Judge Thrash resolved our papers on the papers we filed. Now, I understand you agree that you think we didn't, or perhaps that we didn't properly raise arbitration, but our position is we did. We think cases from other circuits would support that. We certainly think the broad issue... This is Judge Wilson. If we looked at what the Tenth Circuit did in Conrad versus phone directories, it applies a functional two-step approach. It first looks at the caption and title of the motion and the district court's order, and back to Judge Karn's original question, the caption of the motion didn't say anything about a stay or arbitration, and we also look at the district court's order. Why shouldn't we adopt the... about what you need in order to obtain Rule 16 jurisdiction? Why shouldn't we adopt the approach that was taken by the Tenth Circuit in Conrad? Thank you, Judge Wilson. I don't think this panel is able to, because I think if it adopted the court's decision in Conrad, the piece of Conrad that's really novel is it says, you have to move just on arbitration, only on arbitration. You can't move to dismiss and have arbitration. And this court's already ruled in Cappuccini and Telecom Italia that it's perfectly appropriate to have a 12B6 motion that also requests arbitration. And then, you know, Crosby Singular Wireless already has endorsed bringing a motion to dismiss, and that's more like the Fittek case out of the Sixth Circuit, the Dillon case out of the Third. If we adopted that standard, it would provide us some clarity when we get these appeals, and the question is whether or not, you know, we have Rule 16 jurisdiction, whether or not we have a final and appealable order. But what do we do with the language in the district court's order where Judge Thrash says he's not ruling on the throwaway arbitration claims? Well, to Judge Newsom's earlier point, that is an amended order that came after we filed our motion to notice of appeal and motion to stay. Can I ask for a two-minute warning? So, I think with that, you can consider that in the waiver issue but not necessarily in the arbitration issue. The clear rule that this court can adopt would be the one that Fittek and Choice Hotels and other circuits have adopted, that if you move to dismiss by a defendant who doesn't have a claim but is moving to dismiss a claim that's been brought against them, then that can be treated as encompassing the lesser alternative remedy of the stay, in particular here where we actually did raise a request to stay in the alternative with Judge Thrash. So, I think that's the clean rule that could be applied here that's consistent with telecomitalia, consistent with cappuccini, and consistent with the Cruz v. Singular endorsement of just dismissing the whole case if there's nothing remaining after arbitration. In those two cases, though, the party either moved to compel arbitration or moved for a stay, which is not what took place here. In both of those cases, the party either moved to compel arbitration or moved for a stay. Am I wrong about that? Well, in my mind, they filed the exact same papers we did, they just put a different caption on it. And, you know, we asked for arbitration if this indemnification claim was going to live, and we asked for, and we gave Judge Thrash the alternative potential of a stay if the... if he didn't want to dismiss the whole case from his docket. So, we did raise FAA Section 3, we did raise arbitration. But on waiver, you know, the waiver issue was fully briefed by both sides before Judge Thrash. By the way, if arbitration wasn't raised before Judge Thrash, why did they spend so much briefing on it in response? Atlanta wrote a molding statement with a substantial number of pages arguing waiver. It was fully briefed. There is the ability for this court to just go ahead and decide it instead of having more of this back-and-forth proceeding about arbitration with the district judge in this court. So, I'll reserve my further time. Thank you, Mr. Tuck. We'll hear from Mr. Cruz on behalf of C.I. Rotemolding. Thank you, Your Honors, and good morning. May it please the Court. My name is Freddie Cruz, arguing on behalf of the appellee, Atlanta Rotemolding, Inc. Your Honors, really, this entire appeal can be resolved simply by analyzing and resolving the simple question of whether or not this court has the jurisdiction to hear this appeal, as you've been discussing already with Mr. Tuck. I think the answer to that question is unequivocally no. This entire appeal can be resolved simply by applying the Final Judgment Rule found in 28 U.S.C. 1291. The appellee recognizes that there are exceptions to that rule. However, none of those exceptions apply in this case. Quite simply, this is not a situation where the appellant, C.I. Rotemolding, has properly invoked the appellate jurisdiction under Section 16. I think you've already analyzed closely the caption of this case, and you've brought up the Tenth Circuit's two-step approach, which is what the appellee would urge this court to adopt, that essential attributes test beyond looking at the caption. And I think the importance of adopting that approach is to determine whether or not C.I. Rotemolding framed its request in terms of judicial preclusion versus in terms of mandatory arbitration. And quite frankly, looking over both the caption, the motion page contents itself, and the 25-page memorandum, makes clear that C.I. Rotemolding never intended to pursue arbitration. They simply sought judicial preclusion by preventing Atlanta Rotemolding from pursuing its claims altogether. The only remedy sought was dismissal with prejudice of all the claims for failure to state a claim. That's clear both in the motion page, it's clear throughout the 25 pages, and it's clear in the conclusion on the 25th page. Now, C.I. Rotemolding will argue that it raised this alternative remedy on reply when it first, for the very first time, in the last sentence of its argument on arbitration, raised Section 3, Motion to Stay, as an alternative remedy. Your Honors, that was the very first time that it was raised. It's not appropriate to raise new arguments in reply briefs, and Judge Thrash properly did not consider that argument when it was raised in reply, and we would ask that the Court also discredit that argument. So, this is Judge Newsom. Let me ask you a quick question about just sort of the standard, the methodology, the test by which we go about resolving these. I guess, I mean, I have some concern about this sort of scattershot gestalt approach to, you know, look at the caption, and the authority cited, and the request for relief, and whether it's with prejudice or without prejudice. It's just sort of, you know, sprawling, five, six, seven-factor test. I mean, how do you think we ought to approach it? And I guess, as part of your answer, why shouldn't we be looking first and foremost at the order, the District Court's order, and how it interpreted the papers before it? Why should we be looking at least willy-nilly beneath the order to see what we think those papers were trying to communicate? Why shouldn't we just take the District Court at its word? Well, Your Honor, I think you raise a great point. I think you don't... I necessarily don't think you need to look beyond the order, especially in this specific case. The only reason we would urge the Court to adopt the 10-circuits, two-step approach is if the Court is not satisfied by interpreting that order. As you can see here, the order was very clearly relating to a 12b6 motion, as you mentioned, it applied the Twombly-Iqbal standard with no mention whatsoever of arbitration. Yet here we are in this appeal arguing about whether an arbitration motion was raised. So, in those situations, we would ask the Court to take the further step if it's not satisfied by reviewing the order itself of taking a look at what the motion papers actually call for. So, for instance, in a circumstance where I suppose this might happen, the District Court just says, you know, motion granted or motion denied, we would need to look beneath the order. But if the order provides some reasons that give us insight into what the District Court thought it had before it, we should just stop there? Even if the motion said just... it just said granted or denied, I believe that you could stop there. The only issue we have is when we have this appeal where the appellant is asking us to dig deeper because of their motion papers and they're attacking the order itself. The appellee has no issue with the way the order was issued. And quite frankly, the order was even further clarified in our favor on September 5th in the amended order when the judge clearly noted that he was not ruling on a motion to compel arbitration or to stay pending arbitration. I wondered about that. Can we consider that order? I mean, it was entered after the notice of appeal was filed and we technically had the case. Yes, Your Honor, I believe you can consider that order. The case was not stayed at that point and has become a part of the case record. That's different, counsel, from whether the District Court had jurisdiction to enter it just because it's in the record. Even if this court were not to consider the amended order, the resolution of the case does not change. The first order in July 2nd very clearly was a denial of a 12B6 motion. The amended order just provided further clarification for the parties and for this court to consider. Now, if the court chooses not to consider, I do not think that affects the outcome in any way. Was the notice of appeal from the order or from the amended order? My understanding is that the notice of appeal was from the July 2nd original order because the amended order did come after the initial briefing commenced. Well, then that sort of reinforces Judge Newsom's question, does it not? You file a notice of appeal, we get jurisdiction, the case is on its way to us, and then an amended order comes in. Why do we have jurisdiction? I'm sorry, Your Honor, I didn't mean to cut you off there. No, I understand your point and I just would circle back to even if you were to disregard the amended order as not properly before this court, it doesn't change the outcome. The original July 2nd order was a denial of a 12B6 motion. Again, if the court is not satisfied by simply looking at the orders, Judge Newsom suggests it should, you could follow the Tenth Circuit approach and you could look at the essential attributes which clearly show that there was no intention of invoking arbitration or pursuing arbitration beyond seeking this outright dismissal with prejudice. I have a few more points unless there are any further questions on this issue. You can continue. Okay, thank you, Your Honor. Your Honor, I would also like to address the waiver arguments and the positions that have been put forth here. If the court is not inclined to resolve the jurisdictional question by declining and dismissing this appeal, we would ask the court to consider the implicit waiver argument that was set forth at the district court level. To the extent that this court believes that the single reference on the 24th page of the memorandum amounts to a request under the FAA, we ask the court to rely on its own precedent from earlier this year in Davis v. White. This is a case that the district court level, we cited in our brief, but has since gone on appeal and has issued a decision in an earlier part of this year. But the court there in that case clearly noted that the filing of a 12b6 motion seeking a judgment on the merits constituted an act inconsistent with seeking to enforce a right to arbitrate those claims. In this situation here with C.I. Rotemulding, they filed a 25-page motion to dismiss and threw in two paragraphs about arbitration. The only way the court would get to its supposed arbitration argument is if it were to deny the motion to dismiss on the merits. That is inconsistent with their seeking a right to enforce an arbitration agreement. We would ask the court to enforce that precedent in this situation and find that C.I. Rotemulding did in fact implicitly waive its right to enforce arbitration. And again, lastly, Your Honors, if the court is not inclined to find an implicit waiver, we would ask that the court remand the case so that we can fully brief and present evidence regarding the express waiver argument. Contrary to C.I. Rotemulding's position, that issue was not fully briefed. While we did address it in our opposition motion, we were confined to the four corners of the pleadings. We did not present any extraneous evidence. And an employee would request that we have our opportunity to do so at the lower court so that further proceedings can take place. All right. Well, thank you, Mr. Tuck. Thank you. And Mr. Cruz. And that concludes our arguments for this morning. Judge Wilson, I believe I had some rebuttal time. This is Mr. Tuck. Oh, I'm sorry. Go ahead, Mr. Tuck. I'm sorry. Thank you very much. So very quickly, unlike the Tenth Circuit, this court, the First Circuit, the Third Circuit, the Fourth Circuit have endorsed a motion to dismiss as an appropriate means of enforcing an arbitration agreement by a defendant and have said that requests for dismissal can be treated as encompassing the lesser alternative remedy of a stay and reference. And again, in our reply brief, we did cite the stay and reference. Judge Newsom, with regard to your question about the order, looking at the order, Section 16 of the FAA doesn't just say it's an appeal from an order. It says it's an appeal from an order refusing a stay of any action under Section 3. Yes, but where did you make a motion to stay or to compel? By filing a motion to dismiss that includes the argument that the whole case should be dismissed because there's nothing left here after the court enforces arbitration, which this court has endorsed as a remedy under the FAA, and by filing the Section 3 stay as an alternative in the reply brief. Judge Thrash's ultimate conclusion that that entire motion is denied ultimately is an order refusing a stay. But the bigger point on that is what was C.I. Rotemulding supposed to do here? C.I. Rotemulding's position is that there is no indemnification claim. It's only when Judge Thrash ruled that there was an indemnification claim that this arbitration provision comes to bear. It had to file these both in the same motion, and Cappuccini and Telecom Italia allow a litigant to file them both. You had to request both in the same motion, counsel, but you didn't. You filed a motion that simply asked the dismissal for failure to stay the claim. You didn't say, or alternatively, stay and direct the parties to arbitrate. It's a four-sentence motion. You could have added a fifth sentence. We added a sentence that said the Eleventh Circuit has endorsed dismissal when there's nothing left to be arbitrated. Counsel, you keep insisting that your memorandum is your motion. It is not. Why is it too much to simply say in your motion, caption preferred, text required, say something about the relief that you're requesting from the court? The ultimate relief we were requesting from the court was to dismiss the entire case, as this court has said is an appropriate remedy when there's nothing left. For failure to state a claim. The 12B6 standard as opposed to citing a... Plaintiff's claim should be dismissed pursuant to 12B6 because, quote, because plaintiff fails to state a claim upon which relief can be granted, period, end of quote. Not are in the alternative because an arbitration clause requires the case be arbitrated or that part of the case be arbitrated. Well, ultimately, I would ask the court if it should rule on these issues in the spirit of Moses H. Cone for the past decades that these kinds of issues should not be resolved on hypertechnicalities and should be resolved in favor of arbitration. And all we've got to do is rule that it's a hypertechnicality to require a party to state the relief it's requesting in a motion to dismiss. I would say that to hold a party to a standard that hasn't been addressed by this court before when multiple circuits have allowed motion to dismiss to be treated as encompassing a stay request. That's all I have. Thank you. Go ahead. Anything further, Mr. Tuck? No, no. Thank you, Your Honor. All right. Well, that concludes our arguments this morning and the court will be in recess until 9 o'clock tomorrow morning. Thank you. Thank you.